UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAVIER CASTILLO,

                Plaintiff,

v.

WCC SUPERINTENDENT, *et al.*,

                Defendants.

CASE NO. 3:18-cv-05796-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 21, 2020

      The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

      Plaintiff alleges that he was assaulted by a rival gang member while temporarily housed at the Washington Corrections Center ("WCC") during his transfer between prisons. Dkt 9, at 4. Plaintiff claims that defendants failed to protect him in violation of his Eighth Amendment rights by housing plaintiff in the same WCC unit as the rival gang member. Dkt. 9, at 6–8. Defendants move for summary judgment, arguing that plaintiff cannot meet his burden to prove that they

.

1  personally participated in violating plaintiff's constitutional rights or that they acted with

2  deliberate indifference to his safety. Dkt. 26, at 6–9. Because plaintiff has failed to provide any

3  evidence establishing that defendants Rivera (Chief of Investigative Operations at the

4  Department of Corrections) or Ortiz (an investigator at the prison from which plaintiff was

5  transferred) participated in his housing assignment at WCC and has alleged no more than

6  supervisory liability regarding WCC Superintendent Dan White, the Court recommends granting

7  defendants' summary judgment motion and dismissing this matter with prejudice.

**BACKGROUND and PROCEDURAL HISTORY**

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this matter on September 28, 2014. Dkt. 1. Plaintiff's Second Amended Complaint, alleging claims for violation of his Eighth Amendment rights, is the operative complaint. Dkt. 9. Defendants[1] served plaintiff with a *Rand* notice and copies of the motion for summary judgment and supporting documentation on October 30, 2019. Dkts. 26–30. Plaintiff has responded and defendants have replied; the motion is ripe for consideration. Dkts. 37–39.

Plaintiff's Second Amended Complaint was signed under penalty of perjury. Dkt. 9, at 12. Thus, to the extent that it is based upon personal information and sets forth facts that would be admissible in evidence, it will be considered as evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**FACTS**

Plaintiff is a prisoner who, during the relevant time, was transferring from Coyote Ridge Correctional Center ("Coyote Ridge") to a new placement at Clallam Bay Correctional Center

---

[1] Defendants' motion identifies the moving parties only as "defendants." Dkt. 26 at 1. The Court construes the motion as being brought on behalf of all the named defendants—namely, Ruben Rivera Jr., Gustavo M. Ortiz, and the Superintendent of WCC. Dkt. 9 at 2, 13.

1  ("Clallam Bay"). Dkt. 9, at 3. He was temporarily housed at Washington Corrections Center
2  ("WCC") during the transfer. Dkt. 9, at 3; Dkt. 29, at ¶ 4. Plaintiff's transfer was necessitated
3  by his demotion to "Close Custody"—a classification not available at Coyote Ridge—after two
4  positive urinalysis results for methamphetamine. Dkt. 27-1, at 7; Dkt. 37, at 90. Plaintiff is a
5  member of the "La Fuma" gang, a Security Threat Group ("STG") recognized by the Department
6  of Corrections ("DOC"), and his records identify that affiliation. Dkt. 9, at 6; Dkt. 20, ¶ 4; Dkt.
7  27, ¶ 5. It is undisputed that plaintiff sustained significant harm from an assault on April 25,
8  2016 by inmate Jorge Mercado while in the yard of WCC during his transfer. Dkt. 9, at 4–5 and
9  Exhibits A, B, and C. Inmate Mercado is an identified member of the "Paisa" STG, a group that
10  is a rival of La Fuma. Dkt. 37, at 160; Dkt. 27, at ¶ 6.

11  Plaintiff has submitted records indicating that five years before this assault and again
12  following an investigation nearly one year after the assault, plaintiff has been classified as
13  Maximum security and held in segregation due to his STG activity. Dkt. 37, at 180 (dated
14  11/30/2011); Dkt. 37, at 59 (dated 8/22/2018). However, plaintiff's Custody Facility Plan in
15  place during the relevant time shows that he was held in the general prison population and at a
16  less restrictive classification; indeed, his transfer was due to a new demotion from Medium to
17  Close Custody. Dkt. 27-1, at 6; Dkt. 37, at 88. Defendant Ortiz noted in an email preceding
18  plaintiff's transfer that "as far as La Fuma STG he has been doing well and he has been staying
19  out of STG problems." Dkt. 37, at 90.

20  Defendants are employees of DOC. Defendant Rivera is the Chief of Investigative
21  Operations at DOC headquarters; he is responsible for the direction and management of
22  investigative operations and day-to-day administration of the statewide Special Investigative
23  Services Unit. Dkt. 27, at ¶ 3. Rivera states that he is not ordinarily involved in making housing
24

1  determinations and specifically was not involved in plaintiff's housing placement. *Id*. at ¶¶ 5, 7.
2  He states that most STGs can be safely housed together, as some La Fuma and Paisa members
3  have been. *Id.* at ¶ 6. Housing determinations largely depend upon an individual inmate's
4  behavior and demeanor. *Id.*

5  Defendant Ortiz is an investigator at Coyote Ridge, the institution from which plaintiff
6  was transferred; his responsibilities include reviewing incoming inmates for involvement with
7  STGs and identifying and validating STGs. Dkt. 28, at ¶ 2. Ortiz, together with several other
8  investigators from different facilities, conducted interviews of inmates affiliated with La Fuma,
9  including plaintiff, on February 1, 2017 (approximately 10 months after plaintiff's transfer). *Id*.
10 at ¶ 7. The investigation culminated in a report concluding that plaintiff, after his transfer to
11 Clallam Bay, engaged in a "power struggle" within La Fuma, including ordering assaults on
12 fellow gang members. Dkt. 28-1, at 8. Plaintiff contends that, during Ortiz's interview of him,
13 Ortiz stated in Spanish that "DOC was tired of him and on 4/25/2016 they made an attempt[] to
14 kill him by housing inmate [Jorge] Mercado . . . in WCC." Dkt. 9, at 6; *see also* Dkt. 38, at ¶ 2.
15 Ortiz, however, states that his job duties do not include making housing placement decisions at
16 other facilities and that he would therefore not have known which other inmates would be
17 housed with plaintiff during or after his transfer. Dkt. 28, at ¶ 5. Ortiz also states that he had no
18 knowledge prior to the altercation between plaintiff and inmate Mercado that they were being
19 housed together. *Id*.

20 The final defendant is the Superintendent of WCC, the institution in which plaintiff was
21 assaulted while awaiting his transfer to Clallam Bay.[2] WCC's Correctional Program Manager

---

[2] The Court notes that the record, including the Acceptance of Service form and defense counsel's Notice of Appearance, identify this defendant as Dan White. Dkts. 11, 14. The Court therefore disregards defendants' arguments regarding "Superintendent Glebe" (Dkt. 26 at 9),

states that transferring prisoners are housed in accordance with the recommendations contained in the transfer order from the transferring prison, which will include STG affiliations; in addition, WCC staff will also screen the housing placement, including staff discussions with the inmate. Dkt. 29, at ¶ 3. Castillo's La Fuma affiliation was noted in his transfer orders. *Id*. at ¶ 4. There was nothing in the orders that would have raised concerns about placing plaintiff in a housing unit with other STGs. *Id.*

## STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

---

who the record reveals is the retired Superintendent of Coyote Ridge, the institution from which plaintiff was transferred. Dkt. 37, Ex. O to Response at 1. Superintendent Glebe is not a defendant in this case. Dkt. 9 at 2.

| | |
|---|---|
| 1 | **DISCUSSION** |
| 2 | To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the |
| 3 | defendant must be a person acting under color of state law, and (2) his conduct must have |
| 4 | deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of |
| 5 | the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds*, *Daniels* |
| 6 | *v. Williams*, 474 U.S. 327, 328 (1986). A third element of causation is implicit in the second |
| 7 | element. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977); |
| 8 | *Flores v. Pierce*, 617 F.2d 1386, 1390–91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980). |
| 9 | **A. Personal Participation** |
| 10 | To state a claim under 42 U.S.C. § 1983, plaintiff must establish facts showing how a |
| 11 | defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v.* |
| 12 | *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, |
| 13 | 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when |
| 14 | committing an affirmative act, participating in another's affirmative act, or failing to perform an |
| 15 | act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping |
| 16 | conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 |
| 17 | F.2d at 633. Further, a § 1983 suit cannot be based on vicarious liability alone but must allege |
| 18 | the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 |
| 19 | U.S. 378, 385–90 (1989). |
| 20 | *1. Defendant Rivera* |
| 21 | Plaintiff alleges that defendant Rivera, as the supervisor of DOC's investigators, is |
| 22 | "responsible to sign off on all decisions of his subordinate investigators," including "making an |
| 23 | informed final decision as to which gang members shall be house[d] with or near each other." |
| 24 | |

REPORT AND RECOMMENDATION - 6

1 Dkt. 9 at 7.  Plaintiff concludes that Rivera disregarded the rivalry between La Fuma and Paisa

2 and "intentionally signed off on" plaintiff's WCC housing assignment.  Dkt. 9, at 7–8.

3       Rivera has submitted a declaration stating that "inmate housing placement is not within

4 the normal scope of my job duties."  Dkt. 27, at ¶ 5.  His department might occasionally become

5 more involved in placement, but "only if we receive specific information that placing that

6 particular inmate will be problematic."  *Id*.  In all cases, however, the prison staff who actually

7 make housing decisions have access to inmates' STG status.  *Id*.  Rivera notes that the

8 Department is aware of a rivalry between the La Fuma and Paisa groups; however, most STGs,

9 including many members of La Fuma and Paisa, can be safely housed together.  *Id*., at ¶ 6.  It is

10 an individual inmate's behavior and demeanor, not merely his or her gang affiliation, that

11 determines whether separate housing is necessary.  *Id*.  Finally, Rivera states that he had no role

12 whatever in determining plaintiff's housing during his transfer, and "no information or belief that

13 housing Castillo merely based on his affiliation with La Fuma gang would pose a serious threat

14 to his safety."  *Id*., at ¶ 7.

15       Plaintiff's conclusory allegation that Rivera participated in his housing assignment fails

16 to rebut the evidence Rivera has submitted.  Plaintiff's allegation is purely speculative and not

17 made on personal information, while Rivera has specifically stated that housing assignments are

18 not within the scope of his duties and that he had no involvement with plaintiff's housing

19 placement.  A declaration made without a showing of personal knowledge is "entitled to no

20 weight."  *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995).  With nothing more

21 than plaintiff's speculation that Rivera bore ultimate responsibility for housing placements as

22 support, plaintiff's conclusion that Rivera intentionally placed him near Mercado at WCC is

23 inadequate to create a genuine issue of material fact.

24

REPORT AND RECOMMENDATION - 7

1    Moreover, any argument that Rivera (or any of the defendants) should be held liable for
2    failing to create or to enforce a blanket separation between members of rival STGs also fails.  A
3    policy of permitting members of different gangs to be housed together is not itself an Eighth
4    Amendment violation.  *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir.
5    2013).  Indeed, it "'would place an unmanageable burden on prison administrators were they
6    required to separate inmates by gangs.'"  *Id.* (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939
7    (7th Cir. 2001)).  In *Labatad*, even the fact that the plaintiff had fought several days earlier with
8    a rival gang member was insufficient to impose liability upon prison officials for an assault upon
9    plaintiff by a member of the same rival gang who defendants had subsequently assigned as
10   plaintiff's cellmate.  714 F.3d at 1161.  As in *Labatad*, plaintiff here has not shown that Rivera
11   had, or failed to act upon, any particularized information that plaintiff's safety was at risk.

12          *2.  Defendant Ortiz*

13          Plaintiff alleges that defendant Ortiz threatened him during an investigation of an assault
14   on a fellow prisoner in April, 2016; plaintiff claims that Ortiz told him that if he determined
15   plaintiff was involved in the alleged assault, "it would never end for him."  Dkt. 9 at 4.  Plaintiff
16   further alleges that almost 10 months after plaintiff's transfer and Mercado's assault upon him,
17   Ortiz "made a serious bully [sic] in Spanish" to plaintiff, stating that DOC was tired of him and
18   had tried to kill him by housing him with inmate Mercado at WCC.  Dkt. 9 at 9; *see also* Dkt. 38,
19   at ¶ 2.  Plaintiff concludes that "it is very clear Defendants made an attempt[] to kill plaintiff."
20   Dkt. 9, at 7.

21          These statements, taken in the light most favorable to plaintiff, could establish an issue of
22   fact as to whether Ortiz had a state of mind of deliberate indifference to plaintiff's safety.
23   However, they are not sufficient to raise an issue of fact as to whether Ortiz personally

24

1 participated in a violation of plaintiff's constitutional rights. Ortiz states that his "duties do not
2 include making housing placement decisions at other prison facilities." Dkt. 28, at ¶ 5. Indeed,
3 plaintiff's placement at WCC was the job of WCC staff. Dkt. 29, ¶ 3. As a result, Ortiz had no
4 knowledge of the identities of other inmates who would be at WCC during plaintiff's
5 confinement there. Dkt. 29, ¶ 5. In fact, Ortiz was unaware, until after plaintiff was assaulted,
6 that plaintiff and inmate Mercado were housed together. *Id*. At most, Ortiz had knowledge of
7 plaintiff's La Fuma affiliation. But that information was in plaintiff's records and was known to
8 the WCC staff who made plaintiff's housing assignment. *Id*. at ¶ 4. The Eighth Amendment
9 does not obligate prisons to separate rival gang members in the absence of a particularized threat.
10 *Labatad*, 714 F.3d at 1160. Plaintiff has not established that, at the time of plaintiff's transfer,
11 Ortiz had knowledge of any particularized threat aside from plaintiff's gang membership itself.
12 In fact, the record shows that Ortiz did not believe plaintiff's La Fuma affiliation was a cause for
13 concern: Ortiz stated in an email to Rivera that "as far as La Fuma STG he [plaintiff] has been
14 doing well and he has been staying out of STG problems." Dkt. 37, 90.

15      Standing alone, the inflammatory statement about "DOC's" intent that plaintiff relies
16 upon, allegedly made nearly a year after the fact, is not sufficient to raise an issue of fact as to
17 Ortiz's own role and his own knowledge at the time of plaintiff's transfer. Plaintiff has not
18 alleged facts that demonstrate that Ortiz was "the actual and proximate cause of any
19 constitutional violation." *Leer*, 844 F.2d at 634.

20      *3. Defendant WCC Superintendent*

21      Plaintiff's claim against Defendant WCC Superintendent is based upon the failure of the
22 Superintendent's "d[e]signee" to house rival gang members separately. Dkt. 9 at 4. Thus, it is
23 premised solely upon supervisory liability over the designee who made the housing assignment.
24

1     A § 1983 suit cannot be based on vicarious liability alone but must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton*, 489 U.S. at 385–90. A supervisor is only liable for the constitutional violations of his or her subordinates if (1) the supervisor participated in or directed the violations; or (2) knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

    Here, plaintiff has submitted no evidence that WCC Superintendent Dan White had any involvement in the housing assignment plaintiff challenges. Moreover, plaintiff has not rebutted defendants' evidence that WCC staff were informed of plaintiff's STG affiliation, but had no knowledge or information that "would have placed a [WCC] staff member on notice that there would be housing concerns by placing him in a housing unit with members of other [STGs]." Dkt 29, at ¶ 4. Merely housing rival gang members together, without any additional particularized knowledge of a threat, is not a violation of the Eighth Amendment. *Labatad*, 714 F.3d at 1160. There is therefore no causal link between the conduct of the WCC Superintendent in supervising WCC staff and any constitutional violation.

### B. Qualified Immunity

Because the Court has already determined Defendants are entitled to summary judgment as to all of Plaintiff's underlying claims, the Court declines to determine whether Defendants are entitled to qualified immunity.

### C. *In Forma Pauperis* Status on Appeal

*In forma pauperis* status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); see also 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous

where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Here, as noted, plaintiff fails to identify a genuine issue of material fact and the law is clear that defendants did not violate his Eight Amendment rights merely by housing him in the same unit as a rival gang member. As such, the undersigned recommends that plaintiff's *in forma pauperis* status be revoked for purposes of any appeal.

## CONCLUSION

For the reasons set forth above, the Court recommends granting defendants' motion for summary judgment (Dkt. 26) in full and that this action be dismissed with prejudice. The Court further recommends that plaintiff's *in forma pauperis* status be revoked for the purpose of any appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on February 21, 2020 as noted in the caption.

Dated this 4th day of February, 2020.

J. Richard Creatura
United States Magistrate Judge